UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | INDICTMENT NO.: 6:19-CR-00011 |
| | ) | |
| TRAVIS TUENGE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SUPPRESS AND**
**MOTION FOR HEARING PURSUANT TO FRANKS V. DELAWARE**

COMES NOW, Travis Tuenge, Defendant in the above-captioned case, by and through his undersigned counsel, and herby files his Motion to Suppress and Motion for Hearing Pursuant to Franks v. Delaware, showing the Court as follows:

**I.      Statement of Facts.**

On July 8, 2019, the Bulloch County, Georgia Sheriff's Office Command Staff requested that Defendant go to the command office after he completed his daily duties at the Bulloch County Courthouse.[1]  Unbeknownst to Defendant, Georgia Bureau of Investigation Special Agent Brandon Peak ("SA Peak") had already briefed the command staff on a pending investigation targeting Defendant and was waiting for Defendant to arrive.[2]

---

[1] See GBI Investigative Summary, attached hereto as Exhibit 1.
[2] Id.

Shortly after arriving, Defendant was then escorted to SA Peak for an interview.[3] After brief questioning from SA Peak, Defendant invoked his right to remain silent and stated that he did not wish to continue speaking with SA Peak.[4]

Even after Defendant invoked his right to remain silent, SA Peak continued questioning Defendant and asked "if he had any electronic communication devices on his person."[5] Defendant voluntarily relinquished his work phone to SA Peak.[6] Then, "SA Peak asked [Defendant] if he had a personal phone on his person … [and] if SA Peak could have the device."[7] Defendant stated "no" and refused to turn over his personal cell phone.[8] At that point, "SA Peak informed [Defendant] that based off exigent circumstance (evidence on the device could be deleted before a search warrant could be applied for and obtained) SA Peak was seizing his device and a search warrant would be applied for."[9] With that demand, Defendant relinquished his cell phone to SA Peak.[10] Then, the interview was terminated.[11] Defendant was not arrested and left the Sheriff's Office.[12]

---

[3] Id.
[4] Id.
[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Id.

Minutes later, Defendant's attorney, Mr. Gabe Cliett, called GBI Special Agent in Charge John Durden ("SA Durden").[13] Mr. Cliett "wanted to know the justification for the GBI seizing his client's cellular telephone …"[14] SA Durden informed Mr. Cliett "that the cellular telephone was seized (at Agent Durden's direction) because of the likelihood that his client would destroy evidence on the device before a warrant could be obtained."[15] Importantly, Mr. Cliett "argued that turning over the device to him (defense attorney) would satisfy the exigency exception."[16] Ultimately, SA Durden "disagreed and advised [Mr. Cliett] that the GBI would maintain possession of the device and secure a search warrant for said device as soon as possible."[17]

After allowing Defendant to leave the Sheriff's Office, SA Peak and other GBI agents continued the investigation into the evening of July 8, 2019 and through the day of July 9, 2019. During that time, SA Peak interviewed several individuals, including the alleged victims and the victims' family members. Importantly, every witness interviewed in that time period, from the alleged victims to their family members, stated that Defendant never inappropriately touched anyone or took any illegal or inappropriate photographs.[18]

---

[13] See GBI Investigative Summary, a true and correct copy of which is attached hereto as Exhibit 2.
[14] Id.
[15] Id.
[16] Id.
[17] Id.
[18] See GBI Summary Reports attached hereto as Exhibits 3, 4, 5, and 6 which are being submitted to the Court and to the Government under seal and by separate cover.

On July 10, 2019, after interviewing those witnesses, SA Peak prepared the Affidavit and the Application for the Search Warrant for Defendant's personal cell phone.[19]

II. **Argument and Citation of Law**.

"The Fourth Amendment protects individuals from unreasonable search and seizure." United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008).

Here, the Fourth Amendment's protections require that the seizure and search of Defendant's personal cell phone be suppressed because: 1) its initial seizure required a warrant and was not justified by an immediate need for action or other exigent circumstances; 2) the Affidavit in Support of the Search Warrant did not establish probable cause that evidence of child pornography would be found on Defendant's personal cell phone; and 3) the Affidavit in Support of the Search Warrant lacked probable cause because it contained material misstatements and omissions of facts.

    A.    The Initial Seizure Required a Warrant and Was Not Justified by an Immediate Need for Action or Other Exigent Circumstances.

Generally, the seizure of personal property is *per se* unreasonable when not done in accordance with a warrant issued upon probable cause. U.S. Const. amend. IV; United States v. Virden, 488 F.3d 1317 (11th Cir. 2007) (affirming district court's grant of motion to suppress). An exception to that warrant requirement, however, allows the seizure of property when certain exigencies, including the "imminent

---

[19] A true and correct copy of the Search Warrant and Affidavit for Search Warrant are collectively attached hereto as Exhibit 7.

4

destruction of evidence," exist. Crocker v. Beatty, 886 F.3d 1132 (11th Cir. 2018) (holding that district court did not err in determining Fourth Amendment violation occurred because the exigent circumstances exception did not apply to the seizure of a bystander's cell phone). To rely on this exception, though, the government must show an "objectively reasonable basis" for deciding that immediate action was required. Id. (citing United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990)). In other words, there must be specific facts that would have led "a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." Id. (citing Young, 909 F.2d at 446; United States v. Rivera, 825 F.2d 152, 156 (7th Cir. 1987)).

Importantly, the nature of the evidence, itself, cannot create the exigency needed to overcome the warrant requirement. See Crocker, 886 F.3d at 1337. Thus, law enforcement officers cannot seize evidence without a warrant simply because it is contained in a medium, such as a cell phone, that could lead to the destruction of evidence. Id. As the Court detailed in Crocker:

> Beatty contends that the "nature of cell phones" leads to easily-destroyed evidence that disappears quickly. This, according to him, is itself sufficient reason to find exigent circumstances here. Taken to its logical conclusion, his interpretation would permit police officers to seize now-ubiquitous cell phones from any person, in any place, at any time, so long as the phone contains photographs or videos that could serve as evidence of a crime—simply because the "nature" of the device used to capture that evidence might result in it being lost. Not so. The Fourth Amendment draws a line well short of this awesome breadth of government power that no court, to our knowledge, has come close to recognizing. The Constitution requires Beatty's argument to fail.

5

Id.

Moreover, since this exception only applies when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action," United States v. Santa, 236 F.3d 662, 669 (11th Cir. 2000) (citation omitted) (affirming district court's finding that exigent circumstances did not exist to support warrantless entry into apartment), where the "urgent need for action" can be dispensed with through means other than an immediate seizure, the exigent circumstances exception does not apply.  See e.g. United States v. Hernandez-Cano, 808 F.2d 779 (11th Cir. 1987) ("As the district court noted, any exigencies inherent in the situation could have been removed by arresting the defendant, for which probable cause existed"); United States v. Satterfield, 743 F.2d 827 (11th Cir. 1984) (the police re-entry into a home was not justified under the exigent circumstances exception because the police could have secured the premises while they obtained a search warrant).

Here, SA Peak's initial seizure of Defendant's personal cell phone required a warrant and was not justified by an immediate need for action to preserve evidence. Even though SA Peak's own actions unreasonably created his claimed necessity to seize Defendant's phone under exigent circumstances,[20] he still could have pursued

---

[20] Indeed, SA Peak could have obtained search and seizure warrants before interviewing Defendant and informing Defendant that he was a target of an investigation because, as SA Peak claimed just minutes after Defendant's interrogation, "the investigation showed, without a doubt, that TUENGE used his cellular telephone to facilitate a criminal act on which he admitted to molesting two children …" Exhibit 2, GBI Report, p. 1. The urgent need for immediate action did

other actions which would have preserved evidence and complied with the Fourth Amendment's warrant requirement.  First, SA Peak could have completely resolved the absolute need for immediate action by seeking a search warrant before interviewing Defendant.  Second, SA Peak could have arrested Defendant at the conclusion of the interview.  See Hernandez-Cano, 808 F.2d at 782.[21]  Third, SA Peak could have provided Defendant's personal cell phone to Defendant's attorney, Gabe Cliett,[22] who immediately called and requested possession and would have safely kept the phone for a warrant to be secured.  Therefore, because actions other than an immediate seizure of Defendant's personal cell phone would have negated SA Peak's self-created "need" for immediate action, the initial seizure required a warrant and was not justified by the exigent circumstances exception.

Accordingly, the seizure of Defendant's phone and all evidence obtained as a result from the subsequent search should be suppressed.[23]

---

not exist until SA Peak decided to have Defendant report to Bulloch County Command Offices and be approached about an ongoing investigation.

[21] SA Peak acknowledges an arrest would have changed the need for immediate action, writing "[s]ince TUENGE was not arrested during the meeting, he was going to leave with device with knowledge that he was the suspect in a child molestation investigation." Exhibit 1, GBI Report, p.1.

[22] Mr. Cliett is not only a well-respected defense attorney but also an associate magistrate judge for Candler County, Georgia.

[23] But see United States v. Babcock, 924 F.3d 1180 (11th Cir. 2019) (affirming district court's order denying motion to suppress seizure of defendant's cell phone based on exigent circumstances).  Of course, Defendant believes this case to be distinguishable in material facts and points of law.

B.   <u>The Affidavit in Support of the Search Warrant Lacked Probable Cause that Evidence of Child Pornography Would be Found on Defendant's Personal Cell Phone</u>.

"Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence in a particular location." <u>United States v. Brundidge</u>, 170 F.3d 1350, 1352 (11th Cir. 1999).

SA Peak's Affidavit failed to establish a sufficient nexus between alleged child pornography crimes and Defendant's personal cell phone – simply put, the Affidavit does not provide any detail why there was a "fair probability" that evidence of child pornography would be found on the phone. When read with a close eye, SA Peak's Affidavit does not establish any link to Defendant's personal cell phone other than extremely broad statements about the capabilities to perform internet searches and view child pornography.  Just the opposite.  In the few paragraphs that discuss possible evidence of child pornography, SA Peak states that "[Tuenge] did not say on which device this act was performed."[24]

Therefore, the search of Defendant's personal cell phone was not supported by probable cause and it, along with all evidence obtained from the search, should be suppressed.

C.   <u>The Affidavit in Support of the Search Warrant Lacked Probable Cause Because It Contained Material Misstatements and Omissions of Fact</u>.

Even though an affidavit supporting a warrant is presumptively valid,

---

[24] <u>See</u> Exhibit 7, Affidavit, p. 7.

8

probable cause "may be called into question, and a defendant is entitled to a hearing of the validity of a search warrant where (1) the affiant knowingly or recklessly omits facts the defendant enumerates, and (2) inclusion of the facts would have prevented a finding of probable cause." United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990); Franks v. Delaware, 438 U.S. 154 (1978).

In the Affidavit supporting the Search Warrant in this case, SA Peak recklessly made several misstatements, including, among others:

- Based on the aforementioned information, it is clear that a crime has occurred and possibly still occurring by the suspect's own words." Exhibit 7, Affidavit, p. 6.

- Affiant notes the identity of the 5-year-old child is most likely on the cellular phone in question. Identifying the 5-year-old child would help prevent any exploitation of the child and allow law enforcement to conduct a forensic interview of the child about being touched. Searching for any information to help identify the child – as well as other abused children – is very important for the safety of the child being sexually abused and exploited. Exhibit 7, Affidavit, p. 7.

- Affiant also notes that the 5-year-old child has not been positively identified, nor has any other child molested by the subject in his text messages. A search of the device could yield the identity of the child and the identity of other victims that Tuenge has photographed and/or molested. Exhibit 7, Affidavit, p. 8.

Making matters worse, SA Peak also recklessly omitted material facts which not only contradicted the misstatements above, but would have prevented a finding of probable cause, including:

- That the 5-year-old alleged victim had been positively identified two days prior to the swearing out of the search warrant and her father, R.N., provided a statement to SA PEAK to include:[25]

---

[25] All quotes excerpted from R.N.'s statement are contained in Exhibit 3.

- o "Everything on the trip was fine and there were no altercations"

- o "… there only a few times where [R.N] and his wife were gone alone without his children. … there was never a time where TUENGE and TUENGE's wife left them to watch the children. … [R.N.] and [R.N.s wife] left [the minor child] with the TUENGE's once and were gone approximately 30 minutes on the water …

- o [R.N.] cannot recall a time where TUENGE would do bath time.

- That the 5-year-old alleged victim had been positively identified two days prior to the swearing out of the search warrant and her mother, K.N., provided a statement to SA Peak, to include:[26]

   - o She "does not recall a time where TRAVIS would have bathed the kids on vacation by himself"

   - o That she "does not think TRAVIS has ever bathed [A.N.] before"

   - o That "there was no issues during the trip to Lake Sinclair and everything was ok."

- That the 5-year-old alleged victim had been positively identified two days prior to the swearing out of the search warrant and had been forensically interviewed, and she told investigators that:[27]

   - o [A.N.] responded "stating no" when asked if anyone ever touched her in a private place several times

   - o That the agent conducting the forensic interview noting that [A.N.] did not disclose to SA THOMPSON that she had ever been touched inappropriately.

When SA Peak's misstatements and omissions are considered, the Affidavit lacked sufficient probable cause to support the search warrant for Defendant's personal cell phone. Accordingly, Defendant respectfully requests the Court set a Franks hearing and thereafter suppress the search of Defendant's personal cell

---

[26] All quotes excerpted from K.N.'s statement are contained in Exhibit 4.
[27] All quotes excerpted from A.N.'s statement are contained in Exhibit 5.

phone. Indeed, "we should demand the utmost candor in warrant applications." <u>United States v. Taylor</u>, No. 17-14915; No. 18-11852 (11th Cir. 2019) (J. Tjoflat, dissent).

### III. <u>Conclusion</u>.

Based on the foregoing the Defendant respectfully requests that the Court hold a hearing pursuant to <u>Franks v. Delaware</u>, grant his Motion to Suppress, and Order that the government be prohibited from using the fruits of the search at the trial of this case.

Respectfully submitted, this 18th day of November, 2019.

                                        CROWDER STEWART LLP

                                        */s/ C. Troy Clark*

                                        C. Troy Clark
                                        Georgia State Bar No.: 811674
                                        Crowder Stewart LLP
                                        540 Ninth Street
                                        Post Office Box 160
                                        Augusta, Georgia 30903
                                        (706) 434-8641
                                        tclark@crowderstewart.com

                                        ATTORNEY FOR DEFENDANT
                                        TRAVIS TUENGE

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** on all counsel of record by the electronic notification generated as a result of filing this document through the Court's CM/ECF system.

This 18th day of November, 2019.

                                                           CROWDER STEWART LLP

                                                           */s/ C. Troy Clark*

                                                           C. Troy Clark
                                                           Georgia State Bar No.: 811674
                                                           Crowder Stewart LLP
                                                           540 Ninth Street
                                                           Post Office Box 160
                                                           Augusta, Georgia 30903
                                                           (706) 434-8641
                                                           tclark@crowderstewart.com

                                                           ATTORNEY FOR DEFENDANT
                                                           TRAVIS TUENGE